## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JANE GRANVILLE and KATHLEEN McCABE,
Individually and as the representatives of the
ESTATE OF JOHN GRANVILLE,
325 Woodside Road
Angola, New York 14006

Plaintiffs,

v.                                                              Civil Action No. 1:16-cv-1894

REPUBLIC OF SUDAN
Ministry of Foreign Affairs
Khartoum, Sudan,

Defendant.

## COMPLAINT

Plaintiffs, Jane Granville and Kathleen McCabe, bring this action against Defendant, Republic of Sudan, seeking damages arising out of injuries sustained by and the wrongful death of John Granville as a result of his assassination on January 1, 2008.  Plaintiffs, as persons who have claims under 28 U.S.C. § 1605A, seek judgment for damages against Defendant, whose officials, employees, and/or agents both carried out the assassination and provided material support and resources for this act and for whom Defendant is vicariously liable.  In support of their Complaint, Plaintiffs allege that:

### JURISDICTION

1.      This Court has subject matter jurisdiction over this case and personal jurisdiction over Defendant Republic of Sudan pursuant to 28 U.S.C. §§ 1330(a), 1331, and 28 U.S.C § 1605A, which permits civil actions in which money damages are sought for personal

injury, death, and related torts against foreign state sponsors of terrorism.  Plaintiffs have

complied with all conditions precedent to this action.  Plaintiffs have made an offer to arbitrate

this action, pursuant to the international rules of arbitration, contemporaneously with the service

of this Complaint.

## VENUE

2.      This Court is the appropriate venue for this action pursuant to 28 U.S.C.

§ 1391(f)(4).

## PARTIES

3.      Plaintiff Jane Granville, an American citizen, is the mother, heir, and

executrix of the estate of the late John Granville, an American citizen who was assassinated by

agents, officials, and employees of Sudan.

4.      Plaintiff Kathleen McCabe, an American citizen, is John's sister and only

sibling.

5.      Defendant Republic of Sudan ("Sudan") is a foreign state that is, and at all

relevant times hereto has been, designated as a state sponsor of terrorism pursuant to section 6(j)

of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)).  It was first designated a state

sponsor of terrorism on August 12, 1993.  It remained so designated at the time of John

Granville's assassination and is still so designated.  John was assassinated by agents and an

employee of Sudan.  Sudan sponsored John Granville's assassins within the meaning of

28 U.S.C § 1605A, by providing them with material support and resources, including, among

other things, direction, incitement, and cover for the assassination of John Granville.

## JOHN GRANVILLE

6.     At the time of his assassination, John was 33 years old.  Born in Buffalo, New York, John was a humanitarian who dedicated his adult life to improving conditions in impoverished African nations.

7.     John began his career of service when, after graduating from Fordham University, he joined the Peace Corps, spending two years in the African nation of Cameroon. While in Cameroon, John taught English, helped a village build its first school, and co-founded a community newspaper.  As a result of his extensive work with the people of Bamendjou, Cameroon, the local chief gave John the title of *Deffo Sokoudjou* (Close Collaborator to the Chief).

8.     After his Peace Corps assignment ended, John returned to Buffalo even more committed to helping African nations develop out of poverty.  First, he and a fellow volunteer started a business that sold furniture and crafts made in Cameroon.  He then attended Clark University, receiving a master's degree in International Development and Social Change in 2004.  Additionally, John earned a prestigious Fulbright Fellowship in 2003.

9.     As a Fulbright Scholar, John returned to Bamendjou, Cameroon to work on HIV/AIDS prevention.  Using the understanding of the local culture he gained from his Peace Corps experience, he developed new strategies for fighting HIV/AIDS in this region.

10.     After graduating from Clark University, John joined the United States Agency for International Development (USAID) and returned to Africa, first working in Kenya and then in Sudan.

11.     As an American diplomat in Sudan, John helped implement a peace agreement between Sudan's north and south that ended more than two decades of civil war.  He worked with remote communities in Southern Sudan to help bring democracy and self-governance to that part of the world.  He was instrumental in distributing some 50,000 solar powered radios that were meant to keep residents of southern Sudan informed about upcoming elections and an independence referendum.   South Sudan became an independent country in 2011 after 98.8% of the electorate voted for independence from Sudan.

12.     On January 1, 2008, John was shot at least five times by agents and employees of Sudan.  He died from internal bleeding later that day, the victim of a premeditated and politically motivated assassination.

## STATEMENT OF FACTS

13.     Sudan is a country with approximately 37 million inhabitants.  It is located in northern Africa at the east end of the Sahara desert.

14.     Sudan's President, Omar Bashir, assumed the presidency of Sudan in 1989 after he led a group of officers in a military coup that ousted the democratically elected government and converted Sudan into an Islamic Arab State.  Under Omar Bashir's rule, Sudan has been constantly ravaged by war and humanitarian crises.

15.     Omar al-Bashir oversaw a civil war between the Islamic government in the north and rebels in the south, which is largely populated by individuals with indigenous, animist, and Christian beliefs.  This conflict led to a referendum in the south that resulted in the separation of southern Sudan into a distinct country, South Sudan, in 2011.

16.     In the Darfur region of Sudan, al-Bashir oversaw the War in Darfur that has resulted in between 200,000 and 400,000 deaths and the displacement of more than two million people from their homes.  In March 2009, al-Bashir became the first sitting president to be indicted by the International Criminal Court (ICC), for allegedly directing a campaign of mass killing, rape, and pillage against civilians in Darfur.

17.     At the time of John's assassination, U.S.-Sudan relations were strained. President George W. Bush had begun referring to Sudan's actions in Darfur as a genocide, and just the day before John was assassinated, on December 31, 2007, President Bush signed the "Sudan Accountability and Divestment Act," a bill aimed at increasing economic pressure on Sudan to halt its actions in Darfur.

18.     January 1, 2008, the day of John's assassination, was the day set for a United Nations (U.N.) peacekeeping mission to take over peacekeeping responsibilities in the Darfur region from the African Union.  The U.S. supported this U.N. takeover of peacekeeping operations.

19.     John's killers were part of a cell that formed in 2007 after Omar al-Bashir publicly and vehemently rejected the idea of the U.N. peacekeeping mission.  Omar al-Bashir called for a jihad against foreign forces in Sudan.  He threatened to turn Darfur into a graveyard of blue helmets (i.e. the helmets worn by U.N. peacekeepers).

20.     The cell planned to attack U.S. and U.K. officials in Sudan because of their support for the U.N. peacekeeping mission.  According to the father of one of the assassins, John's killers were acting in accordance with Omar al-Bashir's call to fight international troops.

21.     John was assassinated during the early morning hours of January 1, 2008, while returning home from a New Year's party held at the British Embassy.  After his assassins identified John's car as a U.S. Embassy vehicle, they drove up alongside John's vehicle and ambushed him, shooting John and his driver, Abdel-Rahman Abbas, with a 9mm pistol and an AK-47 assault rifle.

22.     Immediately after the killing, Sudanese officials contemporaneously blamed John's murder on (1) crossfire from a dispute between Sudanese nationals fighting among themselves; (2) a street argument or road rage incident between John and Sudanese individuals; and (3) a gambling dispute between John and other attendees of the New Year's party.  These false statements were communicated by Sudanese officials in an effort to hide the true facts surrounding John's assassination and to provide cover so that the assassins could escape.

23.     Despite Sudan's efforts to obscure the true motivations for John's assassination, it was soon reported that the assassination was carried out to send a message to the U.S. government as retribution for the U.S.'s criticism of the way Sudan had handled the crisis in Darfur.

24.     Under pressure from the FBI and the U.S. Department of State, Sudan further investigated the killing, and arrested four men who participated in John's assassination: Abdel Basit al-Hajj Hassan, Mohamad Makawi Ibrahim Mohamad, Mohamed Osman Yusuf Mohamed, and Abdul Raouf Abu Zaid Mohamed Hamza.  A fifth man who supplied weapons but denied knowledge of the plot was also arrested.

25.     Mohamed Osman Yusuf Mohamed, an active duty Sudanese Army officer at the time of John's assassination, is the son of a former al-Bashir cabinet minister.

26.     Abdul Raouf Abu Zaid Mohamed Hamza is the son of the leader of the fundamentalist Islamic group Ansar al-Sunna, which has ties to the Wahhabi sect dominant in Saudi Arabia.

27.     In a video confession, one of the assassins, Abdel Basit al-Hajj Hassan, acknowledged that the assassins were looking for an American to kill.

28.     Under continuing pressure from the U.S. government, Sudan prosecuted John's assassins.  In 2009, the four men who participated in John's assassination were sentenced to death and the individual who supplied weapons was sentenced to two years in prison.

29.     After less than a year in prison, the four men sentenced to death were allowed to escape from the heavily fortified, maximum-security Kober federal prison.  This was the first time in the 54 year history of Sudan that any prisoner had succeeded in escaping from Kober, which was originally a British facility that predates Sudan.

30.     The prisoners were aided in their escape by Qusai al-Jaili and a prison employee, Mubarak Mustafa.

31.     Qusai al-Jaili and Mubarak Mustafa were convicted as accomplices to the escape.

32.     President Omar al-Bashir pardoned Qusai al-Jaili and Mubarak Mustafa over the objections of the U.S. Department of State.  In early August 2016, it was reported that Qusai al-Jaili was killed during an aerial bombardment of an ISIS stronghold in Libya.

33.     Following their escape, the former prisoners produced and distributed a video detailing their escape.  A substantial portion of the 41 minute video was filmed inside the prison during broad daylight indicating that these prisoners were not subject to any reasonable level of security.  Nonetheless, the warden of the Kober prison was cleared of any negligence and was reinstated to his position after only a brief suspension from duty.

34.     Of the four escapees, only one, Abdul Raouf Abu Zaid Mohamed Hamza, was ever recaptured.

35.     On or about April 10, 2014, the Sudanese Supreme Court commuted the sentence of Abdul Raouf Abu Zaid Mohamed Hamza for killing John to a fine of 5,000 Sudanese pounds, approximately $800-$900 U.S. Dollars, or a one-year prison term in the case of non-payment.

36.     The other three assassins are believed to have escaped to Somalia.  It has been widely reported that Mohamed Osman Yusuf Mohamed was killed waging holy war in Somalia.  After Mohamed Osman Yusuf Mohamed's death, Omar al-Bashir's defense minister, Abdel-Rahim Mohamed Hassein, who has also been indicted as a war criminal by the ICC, paid a visit of condolences to the family of John's killer.  It has been reported that Mohamad Makawi Ibrahim Mohamad was killed by al-Qaida's Somalian affiliate, al-Shabab, after he defected to the Islamic State (ISIS).  Abdel Basit al-Hajj Hassan remains at large.

## First Cause of Action – Wrongful Death
### (Under 28 U.S.C. § 1605A(c))

(Jane Granville, as the Sole Beneficiary and Successor in Interest of the Estate of John Granville)

37.     Plaintiffs repeat, reallege, and incorporate by reference those facts and allegations set forth in the foregoing paragraphs as if fully set forth herein.

38.     Mohamed Osman Yusuf Mohamed, an employee of Sudan acting within the scope of his employment as a Sudanese Army officer and following the directives of Omar al-Bashir, his commander-in-chief, to wage holy war against international forces in Sudan, formed a cell that included Abdel Basit al-Hajj Hassan, Mohamad Makawi Ibrahim Mohamad, and Abdul Raouf Abu Zaid Mohamed Hamza for the express purpose of killing U.S. and/or U.K. nationals in Sudan.  Mohamed Osman Yusuf Mohamed, acting within the scope of his employment, provided material support or resources to the other members of the cell, including, but not limited to, services such as training and expert advice and assistance.  Sudan was the sponsor of this terrorist cell within the meaning of 28 U.S.C § 1605A.

39.     Mohamed Osman Yusuf Mohamed, acting as an employee of Sudan, and the other three members of the cell, acting as agents of Sudan following the directives of Omar al-Bashir, assassinated John Granville, directly and proximately causing his death.

40.     Sudanese officials and employees, acting within the scope of their office and employment, provided material support and resources to John's assassins by attempting to obscure the cause of John's death so that the assassins could escape.

41.     After the conviction of John's killers, Sudanese officials and employees, acting within the scope of their office and employment, provided material support and resources

to John's killers by allowing them to escape from the Kober prison and/or aiding them in this escape.

42.     The members of the cell chose to carry out John's assassination, directly and proximately causing his death, because they rightly believed that such an action was approved and sanctioned by Sudan, and that Sudan would allow them to avoid punishment for the assassination.

43.     The actions of the members of the cell, who were agents and an employee of Sudan, and other Sudanese officials and employees constituted an act of extrajudicial killing and the material support and resources for such an act, as defined in 18 U.S.C. § 2339A.

44.     The assassination of John Granville was proximately caused, initiated, and facilitated by officials, employees, and agents of Sudan for whom Sudan is vicariously liable under 28 U.S.C § 1605A(c).

45.     As a result of the death of John Granville, his Estate suffered a loss of accretions that could have been expected to occur over the course of his anticipated life expectancy in an amount of at least $2,000,000.00 as may be proved at trial.

WHEREFORE, plaintiff, Jane Granville, demands judgment against defendant, the Republic of Sudan, for wrongful death, in the amount of $2,000,000.00.

## Second Cause of Action – Conscious Pain and Suffering
### (Under 28 U.S.C. § 1605A(c))

(Jane Granville, as the Sole Beneficiary and Successor in Interest of the Estate of John Granville)

46.     Plaintiffs repeat, reallege, and incorporate by reference those facts and allegations set forth in the foregoing paragraphs as if fully set forth herein.

47.     After being shot at least five times in the head, neck, and chest by agents and employees of Sudan, John endured extreme physical pain and discomfort up until the time he died, hours later, as a result of internal bleeding.

WHEREFORE, plaintiff, Jane Granville, demands judgment against defendant, the Republic of Sudan, for conscious pain and suffering, in the amount of $5,000,000.00.

## Third Cause of Action – Loss of Society
### (Under 28 U.S.C. § 1605A(c))

(Jane Granville and Kathleen McCabe)

48.     Plaintiffs repeat, reallege, and incorporate by reference those facts and allegations set forth in the foregoing paragraphs as if fully set forth herein.

49.     As a result of the death of John Granville, his mother, Jane Granville, and only sibling, Kathleen McCabe, have suffered and will continue to suffer severe mental anguish and the loss of society.

WHEREFORE, plaintiffs, Jane Granville and Kathleen McCabe, demand judgment against defendant, the Republic of Sudan, for wrongful death resulting in the loss of society, in the amount of $20,000,000.00.

## Fourth Cause of Action – Intentional Infliction of Emotional Distress
### (Under 28 U.S.C. § 1605A(c))

(Jane Granville and Kathleen McCabe)

50.     Plaintiffs repeat, reallege, and incorporate by reference those facts and allegations set forth in the foregoing paragraphs as if fully set forth herein.

51.     As a direct and proximate result of the willful, wrongful, and intentional actions of defendant, plaintiffs Jane Granville and Kathleen McCabe endured extreme mental anguish and pain and suffering, and were subject to intense physical injury, pain, discomfort, and inconvenience.

WHEREFORE, plaintiffs, Jane Granville and Kathleen McCabe, demand judgment against defendant, the Republic of Sudan, for intentional infliction of emotional distress, in the amount of $20,000,000.00.

## Fifth Cause of Action – Punitive Damages
### (Under 28 U.S.C. § 1605A(c))

(Jane Granville and Kathleen McCabe)

52.     Plaintiffs repeat, reallege, and incorporate by reference those facts and allegations set forth in the foregoing paragraphs as if fully set forth herein.

53.     The actions of Sudan's officials, employees, and agents, for whom Sudan is vicariously liable, were  criminal in nature; intentional, malicious, outrageous, and extreme; willfully, wantonly, and recklessly disregarded John Granville's fundamental rights and physical well-being; and constitute a threat to the public warranting an award of punitive damages.

WHEREFORE, plaintiffs, Jane Granville and Kathleen McCabe, demand judgment against defendant, the Republic of Sudan, for punitive damages, in the amount of $20,000,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

A.      Judgment against the Defendant for compensatory and punitive damages in the amount of $67,000,000;

B.      Plaintiffs' costs and expenses;

C.      Plaintiffs' attorneys' fees;

D.      Such further relief as the Court finds just and equitable.

Plaintiffs demands a jury trial on all matters so triable.

Dated: Buffalo, New York
        September 22, 2016

**HODGSON RUSS LLP**
*Attorneys for Plaintiffs*


By:  s/Michelle L. Merola
        Michelle L. Merola (Bar ID 451413)
     60 Railroad Place, Suite 300
     Saratoga Springs, New York 12866
     (518) 736-2900

082008.00000 Litigation 14001609v1